CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

DEC 0 1 2016

JULIA C. DUDLEY, CLERK
BY: HMcDonnell
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| KEITH LAMONTE HILL, | ) | CASE NO. 7:15CV00201 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD W. CLARKE, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Keith Lamonte Hill, a Virginia inmate proceeding pro se, timely filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of Hill's confinement on a judgment in Franklin County Circuit Court for two counts of grand larceny in violation of Va. Code § 19.2-254. Respondent filed a motion to dismiss, and Hill responded, making the matter ripe for disposition. After review of the record, I grant the motion to dismiss and dismiss the petition.

## I.

On the morning of July 5, 2010, Rocky Mount Food Lion employees arrived at work to discover that a break-in had occurred overnight. A burglar had cut an entry-hole into the back wall, and the thief had stolen $5,692 of cigarettes. The store surveillance cameras captured a male who fit Hill's description inside the store, holding a bag, and going to various cigarette dispensing locations. Employees called the local police, who began investigating.

On the morning of August 1, 2010, the owner of the Lucky 2 Mart, located in the southern part of Franklin County, discovered that someone had cut an entry-hole into the back wall of his store and absconded with $18,000 of cigarettes. Unfortunately, the surveillance cameras and motion detectors were not functioning.[1] Again, local police began investigating.

---

[1] The record is unclear on whether the motion detectors were disabled, or broken.

1

On August 8, 2010, Lt. Mandeville of the Botetourt County Sheriff's Department responded to a call from 604 Minute Market regarding a break-in attempt. Preliminary investigation did not reveal any suspects,[2] but around this time, Botetourt County officers discovered that similar burglaries, with the same *modus operandi*[3] had occurred in Campbell County, Franklin County, and the City of Lynchburg. A multi-jurisdictional, cooperative investigation began.

On September 4, 2010, Botetourt County Deputy Bruce stopped a suspicious vehicle in the Greenway Market parking lot, long after the store had closed. Hours later, Greenway Market employees reported a suspicious man that claimed to be from the store's security provider, but the individual left before Greenway Market employees phoned police.[4]

On September 9, 2010, Lt. Mandeville obtained surveillance footage from the 604 Minute Market[5] and Greenway Market. In the Greenway Market surveillance tape, the suspicious man, who claimed to be from the store's security provider, placed tape over security motion sensors. Lt. Mandeville strongly suspected that the videos from the two stores showed the same individual: a black male matching Hill's description.

On September 10, 2010, Deputy Bruce informed Lt. Mandeville about the suspicious vehicle in the Greenway Market parking lot, and thereafter Lt. Mandeville obtained the license and DMV information on the two black males that Deputy Bruce had stopped on the morning of

---

[2] The cases in Franklin County went cold during the summer of 2010.

[3] The burglar appeared to "case" his break-ins, cut an entry-hole in the rear of stores in the early hours of the morning, and exclusively stole cigarettes.

[4] Employees filed a report with Botetourt police after the man left the store.

[5] The 604 Minute Market surveillance footage was from August 1, 2010. The video was obtained by Botetourt officers after Minute Market employees heard about the suspicious events at Greenway Market, and then remembered a similarly suspicious event at their store in early August. The surveillance videotape showed a man who "'appeared to be casing [the Minute Market]' . . . 'messing around' by the back wall of the store near the part of the wall where the attempted break-in occurred a week later." Hill v. Commonwealth, 2012 WL 4773583, 2012 Va. App. LEXIS 318, at *12 (Va. Ct. App. 2012).

2

September 4, 2010. Lt. Mandeville then compared the DMV photos with the surveillance footage; Lt. Mandeville believed that one of the black males from the parking lot stop, Hill, was the same black male who appeared in the 604 Minute Market and Greenway Market surveillance videos.

After additional DMV searches, Lt. Mandeville discovered Hill's Bedford address and his ownership of a 2003 Chevrolet. Lt. Mandeville consulted with the Commonwealth's Attorney about attaching a GPS device to Hill's vehicle, and the Commonwealth's Attorney advised that a search warrant was unnecessary. The controlling precedent at the time, Foltz v. Commonwealth, 698 S.E.2d 281 (Va. Ct. App. 2010), stated that the placement of a GPS unit on a vehicle did not constitute a search or seizure. Lt. Mandeville directed Botetourt Deputy Dillow to place a GPS on Hill's vehicle.[6] On September 16, 2010, Deputy Dillow traveled to the city of Bedford, located the Chevrolet outside of Hill's home, and attached the GPS unit onto the undercarriage of Hill's vehicle at approximately 4:30 A.M. The GPS device remained attached to Hill's vehicle until September 27, 2010.

On or about September 21, 2010, Lt. Mandeville met with Campbell County Investigator Tracy Emerson to review Botetourt County surveillance videos, because Emerson suspected that Hill was the culprit for similar Campbell County break-ins. Investigators initially could not connect any getaway vehicles to Hill; however, Emerson discovered that Hill had rented a silver or gray Chevrolet HHR from a car rental company several times in months prior, and a similar vehicle appeared in some of the surveillance tapes.

On the morning of September 27, 2010, a Campbell County Food Lion reported a break-in where an entry-hole had been cut into the back wall of the store, and cigarettes had been

---

[6] The record shows that no warrant was obtained for the GPS attachment, and that no exigent circumstances existed at the time.

3

stolen.[7] Emerson called Lt. Mandeville, who shared GPS data showing that Hill's vehicle had been in the Food Lion parking lot for over an hour earlier that morning. Investigators worked on obtaining search warrants for Hill's vehicle and home. Later that day, Campbell County officers contacted the Bedford Police Department to set up surveillance of Hill's vehicle and coordinate an arrest. Bedford officers then followed Hill and associate Troy Blake when they left Hill's house. Police found stolen cigarettes when they stopped the vehicle, including cartons in the back seat of the vehicle poorly concealed by bedding, and officers took Hill and Blake into custody. After officers advised them of their <u>Miranda</u> rights, Blake gave a full statement implicating both Hill and himself in the Franklin County burglaries, and Hill also admitted involvement in the Franklin County crimes.

On November 1, 2010, a grand jury of Franklin County Circuit Court indicted Hill with two counts of burglary under Va. Code § 18.2-91, two counts of grand larceny under Va. Code § 18.2-95, and two counts of misdemeanor property damage under Va. Code § 18.2-137. On April 18, 2011, Hill filed a motion to suppress the GPS evidence, as well as other evidence gathered in mid-September, arguing that the Botetourt County Sheriff's Department violated Hill's Fourth Amendment rights when they installed a GPS unit onto his vehicle and monitored its location. The Franklin County Circuit Court held several pretrial evidentiary hearings regarding the motion to suppress on March 30, 2011, May 3, 2011, May 17, 2011, and July 8, 2011, but ultimately denied Hill's motion.

On August 18, 2011, Hill pleaded guilty to two counts of grand larceny, and the trial court sentenced Hill to an active sentence of three years and one month in prison, with sixteen years and eleven months suspended. Hill entered a conditional plea that allowed him to appeal

---

[7] Before the break-in report, "[l]aw enforcement authorities from six jurisdictions scheduled a meeting for September 27, 2010, to discuss the related cases." <u>Hill v. Commonwealth</u>, No. 1541-12-3, at 2 (Va. Cir. Ct. Oct. 29, 2013).

the alleged violation of his Fourth Amendment rights regarding the warrantless GPS evidence, as well as pre-trial orders on suppression matters.

Hill appealed to the Court of Appeals of Virginia on October 9, 2012, but the Court assumed without deciding that although police violated Hill's Fourth Amendment rights, the independent source doctrine applied and therefore the evidence was properly admitted. On March 18, 2013, the Supreme Court of Virginia denied Hill's appeal. Hill filed a petition of habeas corpus with the Supreme Court of Virginia on October 22, 2014, which the Court denied, finding that some claims had been litigated previously and thus were not cognizable under state habeas law, while other claims had not been brought and thus were unexhausted and defaulted.

Hill asserts six substantive claims in the habeas petition filed in this court (Resp's Br. 3-4, ECF No. 22):[8]

1. Hill's Fourth Amendment rights were violated when a Botetourt County deputy, acting without a warrant and outside his jurisdiction, criminally attached a GPS device to Hill's vehicle. Hill contends that while the claim was not so labeled on direct appeal, he intended for it to also encompass an allegation of Fourteenth Amendment violation.

2. Hill's Fourth and Fourteenth Amendment rights were infringed when a sheriff's deputy, acting outside his jurisdiction, used the "power of his office to criminally attach" a GPS device to Hill's vehicle and used the device to gather evidence.

3. Hill's Fourth and Fourteenth Amendment rights were violated because police officers, acting in concert, committed multiple criminal acts by attaching the GPS to Hill's vehicle and monitoring the device.

4. The police lacked probable cause to arrest Hill on September 27, 2010.

5. The order entered by the Franklin County Circuit Court on May 9, 2011, was void. It was made void by the ruling in United States v. Jones, 565 U.S. ___, 132 S. Ct. 945 (2012). Also, any subsequent and tangential orders which flowed from the order of May 9, 2011, were likewise void, up to, and

---

[8] Hill has also raised four ineffective assistance of counsel claims. I will address those claims in Section III.

including the opinion of the Court of Appeals of Virginia and the order of the Supreme Court of Virginia on direct appeal.

6. The Commonwealth raised the alternate basis of independent source only on appeal. The independent source doctrine was inapplicable to the facts in this case. The historical record does not support the application of the doctrine. There was not probable cause for the police to arrest Hill based on evidence from September 10, 2010 through September 13, 2010.

Respondent moves to dismiss Hill's habeas claims as procedurally barred and/or without merit, and Hill has responded to the motion.

## II.

### A. Procedural Bar of Substantive Claims

To obtain federal habeas relief, Hill must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (omitting internal quotations).

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest

6

state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)).

Hill has exhausted the available state court remedies for each of his substantive federal claims because Hill has either "fairly presented his claim to the state's highest court" or "a state procedural rule would bar consideration if the claim was . . . presented to the state court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) overruled on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim unless the petitioner can demonstrate cause and prejudice for the default" or "that a failure to consider the claims will result in a fundamental miscarriage of justice." Baker, 220 F.3d at 288 (quoting Gray, 518 U.S. at 162); McNeil v. Polk, 476 F.3d 206, 211 (4th Cir. 2007) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Hill's direct appeal is final and any additional state habeas action would be procedurally defaulted both under Virginia's statute of limitations, Va. Code § 8.01-654(A)(2), and under Virginia's successive petition statute, Va. Code § 8.01-654(B)(2).

Hill's Fourth Amendment allegations in claims 1 through 6 are exhausted and not defaulted. Hill brought the Fourth Amendment claims to the state courts at trial, direct appeal,

7

and in his state habeas corpus petition. Because the issues had been raised and decided in the trial court and on direct appeal, the Supreme Court of Virginia held that the claims were procedurally barred from state habeas review under Henry v. Warden, 576 S.E.2d 495, 496 (Va. 2003). Therefore, all of Hill's Fourth Amendment claims are exhausted and not defaulted.

The Fourteenth Amendment allegations in claims 2, 3, and 4 are procedurally barred under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), because Hill could have raised the issues at trial or on direct appeal, but failed to do so. Slayton is an adequate and independent state procedural rule that bars federal habeas review from considering the merits of claims. Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (citation omitted); McNeil, 476 F.3d at 211.

Additionally, Hill's Fourth Amendment federal habeas claims are procedurally barred by Stone v. Powell, 428 U.S. 465 (1976). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."[9] Id. at 482. Further, federal district courts may not consider "a claim that evidence admitted at trial was the fruit of an illegal arrest . . . on a habeas corpus petition so long as the state courts had afforded a full and fair opportunity to litigate that claim." Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42 (3rd Cir. 1984); see also Cardwell v. Taylor, 461 U.S. 571, 572 (1983); Foltz v. Clarke, No. 3:13CV627, 2014 WL 4202482, 2014 U.S. Dist. LEXIS 117515, at *9-10 (E.D. Va., Aug. 22,

---

[9] In Stone, the Supreme Court stated the rationale for limiting exclusion in habeas petitions:
A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any doubt that the defendant is guilty.
428 U.S. at 490. The Supreme Court continued: "The disparity . . . between the error committed by the police officer and the windfall afforded a guilty defendant by application of the [exclusionary] rule is contrary to the idea of proportionality that is essential to the concept of justice." Id.

2014). In general, "[e]vidence obtained by police officers in violation of the Fourth Amendment is excluded *at trial* in the hope that the frequency of future violations will decrease." Stone, 428 U.S. at 492 (emphasis added). For habeas petitions, "contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs."[10] Id. at 493.

When applying the procedural bar in Stone, a full and fair trial occurs even when "the proper constitutional case law to the facts, i.e., United States v. Jones, 565 U.S. __ (2012) ha[s] not been decided." Foltz, 2014 U.S. Dist. LEXIS 117515, at *11. For example, "a change in the relevant precedent during the course of [petitioner's] litigation of the Fourth Amendment claims in state court does not render his opportunity to litigate the claims less than full and fair for purposes of Stone." Id. at *11-12; see also Boggs v. Bair, 892 F.2d 1193, 1199-1200 (4th Cir. 1989); Foltz v. Clarke, 591 F. App'x 224 (4th Cir. 2015), cert. denied (The Fourth Circuit refused to hear the Foltz appeal.).

Hill's substantive habeas claims 1 through 6 are all procedurally barred by Stone because Hill was afforded a full and fair litigation of the Fourth Amendment issues in the state courts. Hill had "meaningful review" of his Fourth Amendment claims: (1) the trial court held multiple suppression hearings, (2) the Court of Appeals of Virginia specifically considered the impact of Jones when resolving Hill's direct appeal, and (3) the Supreme Court of Virginia reviewed his claims.

In his federal habeas claims 2 through 5, Hill also alleged that his Fourteenth Amendment rights were violated; however, "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that

---

[10] "[I]f applied indiscriminately[,] [the exclusionary rule] may well have the opposite effect of generating disrespect for the law and administration of justice." Stone, 428 U.S. at 491.

9

Amendment, not the more generalized notion of 'substantive due process,' must be the guide." Graham v. Connor, 490 U.S. 386, 395 (1989). Further, "reliance on the Fourteenth Amendment as an alternative basis for his Fourth Amendment claim[s] does not permit [a petitioner] to avoid the Stone v. Powell rule." Mubita v. Wengler, No. 1:08-CV-0310-BLW, 2013 WL 5486878, 2013 U.S. Dist. LEXIS 142908, at *7 (Idaho Sept. 28, 2013). For example, in Herrera v. Kelly, 667 F. Supp. 963 (E.D.N.Y. 1987), the petitioner tried to escape Stone's federal habeas procedural bar by claiming that his due process rights were violated; the petitioner alleged that the state court judge who signed his search warrant was biased, and the judge's lack of neutrality was "so egregious as to rise to the level of a due process or equal protection violation" in addition to any Fourth Amendment violation.[11] Id. at 970. The district court in Herrera held:

> [The petitioner] had an opportunity to press his Fourth Amendment . . . arguments in state court. The state courts rejected those arguments, and [the petitioner] disagrees with their conclusion. But even strong disagreement with a state court's reading of the Fourth Amendment will not suffice to circumvent Stone. The gist of the matter is that [petitioner's] Fourth Amendment claim is just that: a Fourth Amendment claim. Attempts to find other names for that claim will not make it any more cognizable in the context of a federal habeas petition.

Id.

The gist of Hill's argument is that the state courts should have excluded evidence because investigating officers violated the Fourth Amendment; however, without evidence of egregious wrongdoing, such conduct is not a due process violation. Like the petitioner in Herrera, Hill's claims remain firmly grounded in the Fourth Amendment, and Hill cannot prove any grossly negligent, reckless, or intentional police misconduct. His reliance on "vehicle tampering" and jurisdictional issues in a multi-jurisdictional investigation does not constitute "a denial of fundamentally fair treatment . . . [or a] Fourth Amendment Violation . . . so egregious as to rise

---

[11] The Supreme Court defines egregious conduct that would implicate the exclusionary rule as: "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring v. United States, 555 U.S. 135, 144 (2009).

10

to the level of a due process violation." Id. at 970. The state courts afforded Hill a full and fair trial to pursue and litigate whichever issues he desired. Therefore, the rule in Stone still applies, and bars Hill from habeas relief on his Fourth and Fourteenth Amendment claims.

## B. Merits of Substantive Claims

In any event, Hill's substantive claims are without merit. Federal courts review the merits of claims decided by the state courts on direct appeal under the deferential standard mandated by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, a federal court may not grant a state prisoner's habeas application on a claim adjudicated by the state court unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d). Further, the AEDPA standard is "highly deferential" to both factual findings and legal conclusions, and the petitioner bears the burden of proof. Harrington, 562 U.S. at 105; Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

Claims 1 through 6 all hinge on the state courts' interpretation of the Fourth Amendment: whether the courts should have excluded evidence. Therefore, the claims will be addressed concurrently. The Court of Appeals of Virginia assumed without deciding that law enforcement's use of a GPS without a warrant violated Hill's Fourth Amendment rights; however, Fourth Amendment violations do not mandate evidence suppression: "exclusion 'has always been our last resort, not our first impulse . . . [and] [w]e have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." Herring, 555 U.S. at 140-41 (quoting United States v. Leon, 468 U.S. 897, 909 (1984)). Instead, courts weigh the exclusionary rule's benefit of deterring unconstitutional conduct versus the "substantial societal costs . . . [of] letting guilty and possibly dangerous defendants go free." Id.

11

at 141. Therefore, determining that police obtained evidence illegally does not require exclusion, but simply indicates that the exclusionary rule may apply. See id.

First, Hill has claimed that the "independent source doctrine" does not apply to his case.[12] "Even though the exclusionary rule operates to exclude such illegally acquired 'direct' or 'derivative' evidence or information, it does not mean that all such evidence or information is rendered forever unusable." Warlick, 208 S.E. at 748. Instead, "[i]f knowledge of [the evidence] is gained from an independent source they may be proved like any others." Id. (quoting Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920)). Further,

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether . . . the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

Wong Sun v. United States, 371 U.S. 471, 478-79 (1963) (quoting John M. Maguire, Evidence of Guilt 221 (1959)).

---

[12] In his federal habeas petition, Hill listed a series of cases to support his contention that the independent source doctrine does not apply, but he primarily focused on Knight v. Commonwealth, 734 S.E.2d 716 (Va. 2012), Warlick v. Commonwealth, 208 S.E.2d 746 (Va. 1974), and State v. Holden, 54 A.3d 1123 (Del. Super. Ct. 2010). In Knight, the Court of Appeals of Virginia found a warrantless search unconstitutional in part because the independent source doctrine did not apply. The Commonwealth had attempted to argue that an admission of guilt derived from a prior unconstitutional search was an independent source. However, the search and the admission were not independent, as the officer "already knew that the backpack belonged to the appellant and that his prior warrantless search . . . revealed it contained a handgun . . . [the search] was clearly 'used by [the officer] to secure' appellant's admission that there was a gun in his backpack." Knight, 734 S.E.2d at 725. In Warlick, the Supreme Court of Virginia held that "evidence was admissible under the independent source exception . . . [when a statement] was made after the taint of the illegal search and seizure had been removed." Warlick, 208 S.E.2d at 749. Finally, in Holden, Delaware authorities, citing only two confidential sources, performed twenty-four hour surveillance for several weeks on a suspect without a warrant, and without acquiring any additional evidence or suspicion. Holden, 54 A.3d at 1133-34. The Superior Court of Delaware, in a case that preceded but closely aligned with the reasoning in Jones, held that the independent source doctrine could not apply: "Without adequate judicial preservation of privacy, there is nothing to protect our citizens from being tracked 24/7. Delawareans reasonably expect to be free from prolonged 24-hours a day surveillance. Use of GPS technology without adequate judicial supervision infringes upon the reasonable expectation of privacy [absent a warrant or exigent circumstances]." Id. at 1133. Despite Hill's vehement objection to the application of the independent source doctrine in this case, law enforcement officers in Holden performed an unethical fishing expedition without a warrant, without evidence, and without reasonable suspicion; meanwhile, multiple jurisdictions had gathered sufficient evidence to arrest Hill by September 27, 2010.

In Hill's case, authorities across several counties had probable cause to arrest him. The Court of Appeals of Virginia specifically stated: "Here, the officers obtained from an independent source, free from any taint, evidence sufficient to provide probable cause to arrest [Hill] and search his vehicle on September 27, 2010."[13] Hill v. Commonwealth, 2012 WL 4773583, 2012 Va. App. LEXIS 318, at *9. Although Hill claimed that only evidence accumulated from September 10 to September 13 should be admissible, his argument is conclusory, and factually incorrect. Authorities had amassed a great deal of incriminating information against Hill, and because of the peculiar nature of his *modus operandi*, Hill was already a serious suspect by September 10, when Deputy Bruce informed Lt. Mandeville about the suspicious vehicle in the Greenway Market parking lot. The Greenway Market stop and the multi-jurisdictional, cooperative review of surveillance tapes from similar burglaries and attempted break-ins led authorities to realize that the circumstances of the burglaries pointed to Hill. Deputy Dillow attached the GPS device only after Hill became their prime suspect; the investigation was not a "fishing expedition" against an innocent man. Police had already accumulated a great deal of legitimate evidence of his oddly specific *modus operandi*. Therefore, the Court of Appeals of Virginia did not unreasonably interpret the independent source doctrine, and I agree with their analysis.[14]

---

[13] Hill complained in his petition that the Court of Appeals of Virginia was far too vague and offered no guidance as to which officers had probable cause. I disagree. As established by the factual record, Botetourt County authorities had discovered Hill's identity from his suspicious activity in the Greenway Market parking lot, and with store surveillance footage, rental car records, a specific *modus operandi*, and the assistance of the police forces of multiple jurisdictions, Botetourt and Campbell County officers established proper probable cause for Bedford police to arrest Hill, regardless of the GPS data.

[14] Hill alleged on appeal and in habeas proceedings that the independent source doctrine should not apply because the Commonwealth did not raise the issue at trial. Hill cited Jones, because in that case, the government waived an argument that was never brought at trial or in the D.C. Circuit. However, in Hill's case, the Commonwealth of Virginia did raise the independent source doctrine on appeal, and the Court of Appeals of Virginia directly addressed it; therefore Hill's contention is baseless; no waiver occurred.

Additionally, although the Court of Appeals of Virginia only analyzed the independent source doctrine, the good faith exception to the exclusionary rule also applies.[15] In <u>Davis v. United States</u>, 564 U.S. 229 (2011), the Supreme Court of the United States reaffirmed the principle that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." <u>Id.</u> at 242. The Court also noted that "application of the exclusionary rule is unwarranted when it 'does not result in appreciable deterrence.'" <u>Id.</u> at 250 (Sotomayor, J., concurring) (quoting <u>Arizona v. Evans</u>, 514 U.S. 1, 11 (1995)). When officers act egregiously in disregarding Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs; however, when officers act with "an objectively reasonable good-faith belief that their conduct is lawful," or when their actions involve "only simple, isolated negligence," the value of deterrence is low and exclusion cannot "pay its way." <u>Id.</u> at 238 (citations removed).

Hill alleged, at length, that Botetourt officers and others committed crimes that warranted outright exclusion and/or that raised unconstitutional actions to the egregious level.[16] However, authorities arrested Hill in 2010, two years before <u>Jones</u> was decided. According to the record, officers acted reasonably, with the utmost good-faith under precedent at the time, and even consulted the Commonwealth's Attorney for specific advice regarding a warrant requirement. Therefore, the warrantless attachment of the GPS falls squarely into the good faith exception, and the exclusionary rule does not apply.

---

[15] In Hill's associated Lynchburg County Circuit Court case, the Court of Appeals of Virginia applied the good faith exception to the GPS evidence, and found that the exclusionary rule did not apply, as "police reasonably relied upon the binding appellate precedent in effect at the time of the search and . . . '[no] deterrent effect would be accomplished by excluding evidence in this case.'" <u>Hill v. Commonwealth</u>, No. 1541-12-3, 2013 WL 5801742, Va. App. LEXIS 312, at *5 (Oct. 29, 2013) (citation omitted).

[16] The Court of Appeals of Virginia also addressed the issue of exclusion regarding whether the officers committed a crime by attaching the GPS: "[t]he remedy for violation of a statute is not exclusion unless such a remedy is specifically so provided. No such provision exists here." <u>Hill v. Commonwealth</u>, 2012 Va. App. LEXIS 318, at n.3.

14

In his federal habeas petition, Hill relied on the "under color of office" doctrine, which "prohibits a law enforcement officer from using the indicia of his or her official position to collect evidence that a private citizen would be unable to gather." State v. Gustke, 516 S.E.2d 283, 292 (W.V. 1999) (Virginia recognized the doctrine in Hudson v. Commonwealth, 585 S.E.2d 583, 586 (Va. 2003).). When officers attached the GPS device to Hill's vehicle, they never revealed themselves, never used "indicia of [their] position," and never "unlawfully assert[ed] official authority to gather evidence." Gustke, 516 S.E.2d at 292; State v. Phoenix, 428 So.2d 262, 266 (Fla. Dist. Ct. App. 1982). Botetourt County deputies went to Hill's residence and attached the GPS device at night. Therefore the "under color of office" doctrine does not apply.[17]

Lastly, Hill argued that the police's unlawful actions resulted in a due process violation. However, like the petitioner in Herrera, Hill's claims are Fourth Amendment claims. Herrera, 667 F. Supp. at 970. Just because Hill disagreed with a state court decision did not result in the violation of his due process rights. Also, regardless of the illegality of police conduct during the investigation, the conduct was (1) not so egregious as to implicate due process, and (2) not subject to the exclusionary rule.[18]

Therefore, I grant the Respondent's motion to dismiss Hill's substantive claims as procedurally barred by Stone v. Powell and/or without merit.

### III.

### A. Procedural Default of Ineffective Assistance of Counsel Claims

---

[17] Even if the "under color of office" doctrine did apply, the evidence would still not be excluded under the independent source doctrine and the good faith exception.

[18] I agree with the Court of Appeals of Virginia's analysis: "Assuming without deciding Investigator Dillow's actions violated Code §§ 18.2-146 and 19.2-249, that violation does not entitle appellant to suppression of the evidence obtained therefrom." Hill v. Commonwealth, 2012 Va. App. LEXIS 318, at *5.

15

In his § 2254 petition, Hill also filed the following ineffective assistance claims:

1. Appellate counsel was ineffective for failing to challenge the search on direct appeal based on a theory of reasonable expectation of privacy as stated in Katz v. United States, 389 U.S. 347 (1967); State v. Zahn, 2012 S.D. 19, [812 N.W. 2d 490] 2012 WL 862707 (S.D. 2012); and United States v. Maynard, 615 F.3d 544 (D.C. 2010). Hill contends he might well have won his appeal had counsel raised such an argument and he thus is entitled to a second chance at a direct appeal.

2. Appellate counsel failed to challenge the unreasonable GPS search, the criminal acts, and the gathering of GPS information outside of the jurisdiction of the Botetourt officials. Hill contends that he expressly instructed counsel to argue that his Fourth and Fourteenth Amendment rights had been infringed by law enforcement officers in violation of the "under color of office" doctrine. Where a police officer moves beyond his territorial jurisdiction to arrest a citizen and uses his authority as an officer to gather information, the Fourth Amendment is implicated. Appellate counsel initially raised the doctrine in the Court of Appeals of Virginia, but that court did not address it. Counsel's failure to pursue it entitles Hill to a "second chance at direct appellate review."

3. Appellate counsel failed to argue, as directed by Hill, that Hill's Fourteenth Amendment rights "under the doctrine of fundamental fairness mandated by the due process clause" had been violated by the Botetourt County officials, who committed multiple criminal acts against Hill. Under that doctrine, outrageous government conduct has warranted dismissal of indictments. Hill states that counsel initially raised the issue in the appeal in the Court of Appeals, but that court "veered off to the left" and did not directly address it. Hill claims that had counsel pursued the issue, Hill "might well have won" his appeal and thus he is entitled to a "second chance at direct appellate review."

4. Appellate counsel was ineffective when he failed to argue in the Supreme Court of Virginia that the independent source doctrine applied by the Court of Appeals was not applicable to the facts in Hill's case. Counsel should have argued that the historical record did not support application of the doctrine. Counsel should have argued that while the evidence developed between September 10, 2010 and September 13, 2010 in Botetourt County may have been free from taint, evidence developed between September 16 and 27, 2010 was not. Furthermore, if Hill's conduct in Botetourt constituted a crime, he should have been arrested for it, but was not. Counsel's failure to pursue the issue prejudiced Hill.

Respondent argues that these claims are procedurally barred from federal habeas review. I agree.

16

None of Hill's claims of ineffective assistance of appellate counsel have been presented to Virginia state courts.[19] In his state habeas proceeding, Hill only brought claims of trial error, and never claimed ineffectiveness of counsel. Therefore, all of Hill's ineffective assistance of counsel claims are simultaneously exhausted and defaulted. Hill is barred from litigating these claims in state court by both (1) Virginia's habeas corpus statute of limitations, and (2) Virginia's successive writ bar. See Va. Code § 8.01-654(A)(2) (must file criminal habeas petition within two years of trial final judgment or one year of final disposition of appeal); Walker v. Martin, 562 U.S. 307, 321 (2011); see also Va. Code § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition."); Bassette v. Thompson, 915 F.2d 932, 936 (4th Cir. 1990). Thus this court can consider his claims only if he shows cause. Id. at 937.

Hill cannot show justifiable cause, or actual prejudice regarding his defaults. He also has not shown that this court's refusal to review his ineffective assistance of counsel claims would result in a fundamental miscarriage of justice.[20] Further, Hill may not rely on Martinez v. Ryan, 556 U.S. __, 132 S. Ct. 1309 (2012) to show cause. In Martinez, the Supreme Court of the United States has allowed a limited exception to overcome default when a petitioner alleges ineffective assistance of trial counsel; the exception does not apply to claims that allege only

---

[19] Hill has not presented ineffective appellate counsel claims to the state courts for his Franklin County habeas petition; however, he has alleged various other ineffective assistance claims for his habeas cases in other jurisdictions.

[20] A colorable claim of actual innocence can also serve as a "gateway" to secure the adjudication of a defaulted constitutional claim. Schlup v. Delo, 513 U.S. 298, 315 (1995). "The petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of [some] new evidence." Id. at 327. Hill does not assert a colorable showing of actual innocence under the Schlup standard so as to open that gateway to consideration of his defaulted claims; Hill asserts no new evidence and conclusory legal arguments. See Burket v. Angelone, 208 F.3d 172, 183 n.10 (4th Cir. 2000) (finding that as petitioner bears burden to raise cause and prejudice or actual innocence, a court need not consider either if not asserted by petitioner). Hill's argument that the investigating police committed crimes and therefore evidence should be excluded is not a valid assertion of actual innocence.

ineffective appellate counsel.[21] <u>Martinez</u>, 132 S. Ct. at 1317-18; <u>see, e.g.</u>, <u>Hodges v. Colson</u>, 727 F.3d 517, 531 (6th Cir. 2013); <u>Dansby v. Hobbs</u>, 766 F.3d 809, 833 (8th Cir. 2014) <u>cert. denied</u>, <u>Dansby v. Kelly</u>, 136 S. Ct. 297 (2015); <u>Banks v. Workman</u>, 692 F.3d 1133, 1148 (10th Cir. 2012); <u>but see</u> <u>Nguyen v. Curry</u>, 736 F.3d 1287, 1296 (9th Cir. 2013) (<u>Martinez</u> not limited to claims of ineffective assistance of trial counsel).

Therefore, I find that Hill's ineffective assistance of counsel claims are procedurally barred from federal habeas review and dismiss them accordingly.

### B. Merits of Ineffective Assistance Claims

Even if Hill were able to overcome his procedural default, his ineffective assistance claims are without merit. A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). "The petitioner must show both deficient performance *and* prejudice; the two are separate and distinct elements." <u>Spencer v. Murray</u>, 18 F.3d 229, 232-33 (4th Cir. 1994) (emphasis added). For the first prong, Hill must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687-88. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or common custom." <u>Richter</u>, 562 U.S. at 105 (quoting <u>Strickland</u>, 466 U.S. at 690).

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688. Courts reviewing habeas petitions maintain a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." <u>Id.</u> at 689. "Judicial scrutiny of counsel's performance must be highly

---

[21] A circuit split exists, and the Fourth Circuit has not squarely decided this issue, but the majority of circuits have held that <u>Martinez</u>'s limited exception to default only applies to claims of ineffective assistance of *trial* counsel. Regardless, Hill's claims are without merit.

18

deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id. at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014).

For the second prong, a petitioner must demonstrate that, but for counsel's alleged error, there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. Lastly, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

The range of reasonable professional assistance is just as wide on direct appeal as it is at trial. In particular, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (quoting Jones v. Barnes, 463 U.S. 745, 752 (1983)). Indeed, requiring counsel to raise every claim, or even a multiplicity of claims, runs the risk of detracting from contentions that may be truly meritorious. Appellate counsel accordingly enjoys a "presumption that he decided which issues were most likely to afford relief on appeal," a presumption that a defendant can rebut "only when ignored issues are clearly stronger than those presented." Id. (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993); Smith v. Robbins, 528 U.S. 259, 288 (2000)).

19

In the first claim, Hill alleged that appellate counsel's performance was deficient because counsel did not challenge the search on direct appeal on the basis of the "reasonable expectation of privacy" test in Katz v. United States, 389 U.S. 347 (1967).[22]  However, the Court of Appeals of Virginia stated: "On appeal, [Hill] argues the . . . placement and use of the GPS without a warrant or exigent circumstances . . . infringed his reasonable expectation of privacy . . . which rendered the actions of police an illegal seizure and search in violation of the United States and Virginia Constitutions." Hill v. Commonwealth, 2012 Va. App. LEXIS 318, at *1-2.  Hill's appellate counsel did not argue, and the Court of Appeals of Virginia did not provide, a full Katz analysis; however, the Court of Appeals saw no need, because the recently decided Jones case determined that warrantless GPS tracking violated the Fourth Amendment.  Therefore, no Katz analysis was necessary; the Court simply "assumed" that Botetourt County officers violated the Fourth Amendment.  Instead, the Court of Appeals of Virginia focused on the main issue: whether the circumstances should result in evidence exclusion.  The Court of Appeals of Virginia found that the "evidence [was] obtained from independent sources[,] provided probable cause for appellant's arrest . . . and for the accompanying search of his vehicle." Id. at *6.  I agree with the Court of Appeals of Virginia's analysis.  Regardless, the state's adjudication of this claim was not contrary to, or an unreasonable application of, Strickland, and was not based on an unreasonable determination of the facts.  Hill's appellate counsel's failure to present a cumulative Fourth Amendment argument did not constitute ineffective assistance of counsel.  Therefore, I grant the motion to dismiss as to claim 1.

---

[22] The test in Katz determines what Fourth Amendment protection exists in a particular situation.  The test has two prongs: (1) a person must have a subjective expectation of privacy and (2) that expectation must be objectively reasonable.  Katz, 389 U.S. at 353.  However, Fourth Amendment violations do not mandate evidence exclusion.  See Davis, 564 U.S. at 239-40.

20

In the second claim, Hill alleged that appellate counsel failed to challenge the unreasonable GPS search, the alleged criminal acts of police, and the gathering of information by Botetourt County officials outside Botetourt County. Once again, the Court of Appeals of Virginia specifically mentioned that the "placement and use of the GPS without a warrant or exigent circumstances . . . rendered the actions of police an illegal seizure and search . . . ." Hill v. Commonwealth, 2012 Va. App. LEXIS 318, at *1. Instead of focusing on the jurisdictional issues of the actions of a Botetourt County deputy, the Court of Appeals merely "assume[d] without deciding" that the GPS search was illegal based on Jones. Id. at 2. The record shows that appellate counsel raised and advocated for police misconduct and unreasonable search and seizure issues, but (1) Fourth Amendment and statutory violations do not mandate evidence exclusion, and (2) alleged police misconduct did not reach the "egregious" level necessary to sustain a due process violation. Hill's allegation that appellate counsel did not "pursue" the claim in the way that Hill desired does not sustain a claim for ineffective assistance.[23] Thus, Hill has not proven deficient performance or prejudice, and I grant the motion to dismiss as to claim 2.

In his third claim, Hill alleged that appellate counsel failed to argue that law enforcement officials had violated his Fourteenth Amendment rights under the doctrine of fundamental fairness. Hill claims that the state courts should have dismissed the indictment, which can only occur in extreme circumstances where "law enforcement's conduct . . . was so outrageous as to shock the conscience and violate [] due process." United States v. Erwin, 520 Fed. App'x 179, 180 (4th Cir. 2013). Courts have a "'high shock threshold' when there is a claim of outrageous government conduct," and claimants must prove that "the conduct of law enforcement is so

---

[23] Hill admitted in his habeas petition: "Appellate counsel initially raised the 'under of color of office' [doctrine] on appeal, however, the Court of Appeals did not address or decide this issue. Rather, the Court of Appeals veered off to the left . . . ." (Pet. 33, ECF No. 4).

outrageous that due process would absolutely bar the government from invoking judicial processes to obtain a conviction[.]" United States v. Osborne, 935 F.2d 32, 36 (4th Cir. 1991); Erwin, 520 Fed. App'x at 179. Hill has not alleged sufficient facts to support a claim of outrageous governmental conduct. During the investigation of Hill, law enforcement officers did not "manufacture[] evidence," "approach apparently innocent people and provide them with a specific opportunity to engage in criminal conduct," or other highly illegal, clearly unconstitutional, conduct.[24] Erwin, 520 Fed. App'x at 180; Osborne, 935 F.2d at 35. Therefore, Hill cannot prove deficient performance or prejudice in appellate counsel's failure to raise this meritless claim. I grant the motion to dismiss as to claim 3.

Lastly, in the fourth claim, Hill alleged that appellate counsel was ineffective when he failed to argue that the independent source doctrine was inapplicable, and that only evidence gathered between September 10 and September 13, 2010 was free from the taint of the GPS evidence. As discussed extensively in Part II.B., authorities had already pinpointed Hill as the prime suspect by September 10, 2010. At the point Botetourt officers attached a GPS to his car in Bedford County, multiple jurisdictions had already amassed a great deal of untainted evidence against Hill. Also, officers did not solely utilize GPS evidence for probable cause, like in Holden; in fact, regardless of any additional GPS evidence, the investigation centered on Hill because the burglary followed his highly specific *modus operandi*. Officers went to Hill's home, viewed the suspicious bedding in his car, and then multiple jurisdictions cooperated to properly arrest him. Hill failed to prove that appellate counsel was deficient or that he was prejudiced by

---

[24] Though law enforcement officers may have violated Virginia law and the Fourth Amendment, Hill repeatedly missed the crux of the Court of Appeals of Virginia arguments: violations of state law and the Fourth Amendment do not automatically raise officers' conduct into the "outrageous" category. Hill could not even meet the lesser standard of the exclusionary rule because: (1) "[t]he remedy for violation of a statute is not exclusion unless such a remedy is specifically so provided," (2) the Commonwealth proved Hill's crimes with independent sources, (3) the investigatory efforts of police officers who act in reasonable reliance upon binding precedent are not subject to the exclusionary rule, and (4) the officers' investigatory conduct was not so outrageous as to implicate due process. Hill v. Commonwealth, 2012 Va. App. LEXIS 318, at *2 n.3; Davis, 564 U.S. at 241.

appellate counsel's failure to argue that the independent source doctrine was inapplicable. I grant the motion to dismiss as to claim 4.

## IV.

For the foregoing reasons, I grant Respondent's motion to dismiss, and dismiss the petition for a writ of habeas corpus. Based upon my finding that Hill has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

**ENTER:** This ___1___ day of ~~November~~ Dec., 2016.

Senior United States District Judge

Case 7:15-cv-00201-JLK-RSB   Document 27   Filed 12/01/16   Page 23 of 23   Pageid#: 717